Spear, J.
Whether or not a vendor’s lien should be given preference over a tona fide mortgage solely because a judgment lien intervenes, is the question presented by the record in this case. To recapitulate briefly, it jnay here be stated that the land was sold and conveyed by Sidwell and "Davis, and possession given, prior to February 27,-1892; that on this last named date the judgment now owned by Kuhn was rendered, and levy of execution on the land made December 19, following, and that the mortgage of the purchaser to Ochsenbein was left for record February 27, 1895. At the date of the *186 decree there was due the vendor $1,297.49, due the judgment creditor $410.25, and owing on the mortgage $3,376.20. The proceeds of sale are $2,700.00.
It was the judgment of the circuit court that the vendor’s lien should be given such preference, and that conclusion is sought to be maintained by counsel for defendant in error on the ground that the only recognized moral and equitable superiority among the liens is that of the vendor’s lien over the judgment, and that any determination as to priority other than preferring the vendor’s lien, works the inequitable result of paying the judgment, inherently inferior, while the vendor gets nothing.
Before discussing the real point of controversy it may be proper to consider briefly the character of the respective claims. The lien of a vendor after conveyance for unpaid purchase money, as between vendor and purchaser, his heirs and others acquiring title with notice of the equity, has been recognized and enforced in this state since its settlement, although in many of the states of the Union the rule does not prevail. It is founded upon the equitable proposition that he who has gotten the estate of another ought not to retain it without paying the full consideration. The principle does not exist at common law. The remedy is purely of equitable cognizance and the lien, as recognized in this state, is not an unqualified one, for, if it be shown that the vendor depends upon, takes, or looks to any other collateral security, the lien does not attach. As held in Williams v. Roberts, 5 Ohio, 36, where the vendor took notes with personal security, he did not retain a lien on the land; although, as held in Boos v. Ewing, 17 Ohio, 500 (by a divided court), the taking of a mortgage on the land sold to secure payment of purchase money, *187 does not extinguish the prior equitable lien, but it remains as against a judgment obtained between the date of the mortgage and the time of record. Nór does the rule in any case give the vendor priority over a bona fide purchaser. This is upon the clear ground stated by Chief Justice Marshall in Bayley v. Greenleaf, 7 Whea., 46, thus: “To the world the vendee appears to hold the estate divested of any trust whatever; and credit is given to him in the confidence that the property is his own in equity as well as at law. A vendor relying upon this lien ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is in some degree accessory to the fraud committeed on the public by an act which exhibits the vendee as the complete owner of an estate on which he claims a secret lien. * * * The lien of the vendor, if in the nature of a trust, is a secret trust; and although to be preferred to any subsequent equal equity unconnected with a legal advantage, or equitable advantage which gives a superior claim to the legal estate, will be postponed to a subsequent equal equity connected with such advantage.”
We have here, then, a claim to priority on the part of the vendor based upon a condition purely equitable. The claim of the judgment creditor is fixed by statute and is purely legal. That of the mortgagee is also statutory, but it rests, also, on equitable considerations, inasmuch as he has parted with his money upon the faith of a condition, as to title and possession, existing by reason of the voluntary act of the vendor. He has not only a lien upon the property, but has a conveyance of the estate by way of pledge, and is in the position of a bona fide purchaser with a right to use the legal title for the purpose of making his security effect *188 ual. Ranney, J., in Harkrader v. Leiby, 4 Ohio St., 611; Anketel v. Converse, 17 Ohio St., 11; Allen v. Everly, 24 Ohio St., 97. It is apparent that the position of the parties before the court is not equal; indeed it is apparent that they stand in positions of marked inequality, and that the rule that where there are equal equities the first in order of time shall prevail, will not aid in determining the issue.
But it is insisted in favor of the vendor that a satisfactory principle can be invoked for application here, in analogy to that rule. It is conceded that the judgment is superior to the mortgage, and the mortgage to the vendor’s lien, and that no two of the equities are equal, but, the vendor’s lien being superior to the judgment, it is insisted that the equities are so related among themselves that the three cannot be arranged in order of preference, for when we try it we have a circle, and hence the impossibility of arranging two equal equities in any order of inherent preference compels a resort to the test of time, and when that becomes necessary such test in law is a reasonable one, and should prevail. The problem cannot, it is claimed, be solved by starting arbitrarily with one of these liens, taking out a certain amount for it, and passing it along the line in an attempt to find a resting place for it, for it cannot stay there. If an amount should be reasoned into the pocket of the mortgagee, no one could deny the right of the judgment creditor to snatch it away, and when it reached that place, no sufficient answer could be made to the vendor’s demand to take it from the judgment.
The solving of puzzles is often an interesting mental pursuit, but the duty of the court is to settle controversies between litigants rather than to disentangle perplexing mental problems. If the is *189 sues can be determined by the application to the facts of just and well settled legal principles, we need not concern ourselves whether the result fully satisfies the ingenuity of the mental juggler or not. The question is, who, among these parties, under the facts, is entitled to the proceeds of sale?
1 Pomeroy’s Eq., Secs. 413, and following, are cited as offering support to the position of counsel. It is difficult to see how this author aids the contention. He quotes approvingly and at length from Rice v. Rice, 2 Drew., 73, a purely equitable case, where the Vice-Chancellor treats the test of time in this wise. He says: “The rule is sometimes expressed in this form: ‘As between persons having only equitable interests, qui prior est tempore potior est jure.’ This is an incorrect statement of the rule, for that proposition is far from being universally true. * * * Another form of stating the rule is this: ‘As between persons having only equitable interests, if their equities are equal, qiñ prior est tempore potior est jure.’ This form of stating the rule is not so obviously incorrect as the former, and yet even this enunciation of the rule (when ’accurately considered) seems to me to involve a contradiction. For when we talk of two persons having equal equities or unequal equities, in what sense do we use the term ‘equity’? For example, 'when we say that A, has a better equity than R, what is meant by that? It means only that according to those principles of right and justice which a court of equity recognizes and acts upon, it will prefer A. to B., and will interfere to enforce the rights of A. as against B. And, therefore, it is impossible strictly speaking, that two persons should have equal equities, except in a case in which a court of equity would altogether refuse to lend its as *190 sistance to either party as against the other. If the court will interfere to enforce the right of one against the other on any ground whatever, say on the ground of priority of time, how can it be said that the equities of the two are equal; i. e., in other words, how can it be said that the one has no better right to call for the interference of a court of equity than the other? To lay down the rule, therefore, with perfect accuracy, I think it should be stated in some such form as this: ‘As between persons having only equitable interests, if their equities are in all other respects equal, priority of time gives the better equity; or, qid prior est tempore potior est jure.’ I have made these observations, not of course for the purpose of a mere verbal criticism on the enunciation of Ihe rule, but in order to ascertain and illustrate the real meaning of the rule itself. And I think the meaning is this: that in a contest between persons having only equitable interests, priority of time is the ground of preference last resorted to; that is, that a court of equity will not prefer the one to the other, on the mere ground of priority of time, until it finds upon an examination of the relative merits there is no other sufficient ground of preference between them. Or, in other words, that their equities are in all other respects equal; and that if the one has on other grounds a better equity than the other, priority of time is immaterial.” And, Mr. Pomeroy sums up, in Sec. 415, thus: “It follows from this explanation of the principle that when several successive and conflicting claims upon or interests in the same subject matter are wholly equitable, and neither is accompanied by the legal estate, which is held by some third person, and neither possesses any special feature or incident which would, accord *191 ing to the settled doctrines of equity, give it a precedence over the others wholly irrespective of the order of time — under these circumstances the principle applies, and priority of claim is determined by priority of time. There are, however, many features and incidents of equitable interests which prevent the operation of this rule, and which give a subsequent equity the precedence over a prior one, as will be fully shown in the next chapter. The principle embodied in this maxim lies at the foundation of the important doctrines concerning priorities, notice, and the rights of purchasers in good faith and for a valuable consideration, which so largely affect the administration of equity jurisprudence in England, though to a less extent in the United States, and which are discussed in the following chapter.” And why does it not necessarily follow, as a converse proposition, that if the legal estate is held by one of the claimants, or he has a right to use the legal title, then priority of time is immaterial? See, also, Hume v. Dixon, 37 Ohio St., 66, where it is held that the rule that as between equities in all respects equal the older will prevail does not apply when the junior equity is superior in merit. To like import is an observation of the author of Jones on Mortgages, Sec. 1078, that: “The mere fact that the vendor’s lien is the elder equity, is not sufficient to give it preference. It is only when the equities are in all other respects equal that priority of time gives the better equity.”
It is to be kept in mind that the contention here is wholly between the vendor and the innocent Iona fide purchaser. There is no dispute between the judgment creditor and that purchaser. The purchaser concedes that between himself and the judg *192 ment creditor the law gives a preference to the lat-' ter, and that is an end of it as between them. Nor does the judgment creditor deny that as between him and the vendor, considered alone, the vendor’s claim is prior. In such a situation how can it reasonably be claimed that the superior position of the mortgagee should be subordinated to the inferior one of the vendor? It must be perfectly plain (that any legerdemain which results in rewarding the negligent vendor, at the expense of the vigilant, mortgagee, would prove, if not a fraud upon the law, at least a defeat of it and a sacrifice of justice. We are unable to see any good reason for such action. The claim seems unconscionable. The vendor comes into court asking to obtain favor over one who has trusted to the condition of title and possession which he himself created. Were it not that there, is an intervening judgment no one would he bold enough to make such a claim. Though a refusal of it works to the advantage of the judgment creditor, how can the vendor be heard to complain? He is no worse off by reason of it. We think he cannot. Such result takes nothing from him, and that it takes something from the mortgagee is, using plain terms, no concern of his. When the mortgagee advanced the money and took the mortgage, the land was, in law, and according to the public records to which all have recourse to ascertain titles, the property of the mortgagor subject only to the lien of the judgment. As well put by counsel for plaintiff in error, “the mortgagee had then the right to pay off, or purchase, the judgment, and had he done so no possible claim could have been advanced by the vendor as against the mortgage.” Why should the court now put the mortgagee in a worse position than he placed himself in then? We think it *193 should not. Nor need we mourn the result as to the vendor, arising from the satisfaction of the judgment. It is common knowledge that tradesmen, and others, as matter of ordinary commercial usage, extend credit upon the faith of title to land as shown by the public records. Credit is given to one in possession with record title, “in the confidence that the property is his in equity, as well as law.” We make no criticism upon the rule that in a controversy simpiy between a vendor’s lien and a subsequent judgment lien, the former will prevail, but it need not be matter of special regret that the rule is not always, and under all circumstances, available to the vendor. It should be enough to say that it is not available in this case because its application would work manifest injustice.
Our conclusion is that the mortgage stands before the vendor’s lien, but second to the judgment, and that in distribution, there should, after payment of costs and taxes, be first deducted from the amount due on the mortgage a sum sufficient to pay the judgment which should be paid to the judgment creditor, and the balance be paid to the mortgagee.
The precise question has not been heretofore presented to this court so far as we are aware, although questions somewhat analagous have been passed upon. Counsel for plaintiff in error cite Day v. Munson, 14 Ohio St., 488, as determining the issue here in favor of the mortgage. A distinction between the case is sought to be drawn by opposite counsel on the suggestion that in that case the first chattel mortgages were void, which cannot be said of the vendor’s lien. They also insist that the case cited rests upon its own facts and conditions. With *194 tbis last proposition we agree. It is true, too, that the court in the report of that case remarks that the plaintiff’s mortgages, not having been re-filed, pursuant to statute, are void as to the third mortgage. There is no special significance in the term “void.” Characterizing the plaintiff’s mortgages as “void” did not discredit them- save as to the third mortgage. The case at bar, also, rests upon its own facts and conditions. Its determination against the vendor, as before remarked, results from the inherent weakness of his claim.
The judgment of the circuit court as to the distribution of the proceeds of sale will be reversed and the cause remanded to that court with direction to enter an order of distribution in accordance with this opinion.

Reversed.